Arguments not to exceed 15 minutes per side. Mr. Redeker for the appellate. Before we proceed, I have the honor to present to the court one of our students from the University of Michigan Law School, Federal Appellate Litigation Clinic, Ezekiel Redeker, who has ably represented Mr. Jones throughout his proceedings in the Appellate Litigation Clinic. We have granted that motion. You may proceed. Good morning, your honors. May it please the court. My name is Ezekiel Redeker, and I'm here representing Appellate Brandon Jones. May I reserve three minutes for rebuttal? You may. Thank you. Mr. Jones challenges the district court on two different grounds. First, the procedural error that occurred when the sentencing judge claimed that the career offender enhancement was mandatory. Second, a confluence of factors that render Mr. Jones' sentence substantively unreasonable and unusual according to circuit case law. Mr. Jones' case presents an issue of ongoing concern to district courts throughout the country, whether a judge has to apply the career offender enhancement. The language of the district judge at trial was problematic when he stated, I can't say you're not a career offender because you are. I mean, I would have to... ...pass the language because we can discuss exactly what he meant by it. But I take your submission to be, as I read the brief, that a judge who makes the legal and factual findings that a person is a career offender may disregard that in calculating the guidelines. Yes, sir. Okay, and your brief says about a chorus of people doing various things, but your best citation seemed to be this Newhouse case in which the judge says, and I'm quoting from his, I will determine the advisory guideline range, and then he says, I will consider whether to vary based upon my independent obligation, including any policy disagreements with the guideline. So as I read that, the judge in Iowa, in your own case, says, I have to calculate the guidelines correctly, i.e., I apply the career offender guideline, and then I vary from it. And if that's sort of your best case, where do you have anything that says that a court can not calculate the guidelines correctly as a starting point? What happened in this case was that the judge confused the initial calculation of a sentence with a final determination. In this case, a court is obligated in Newhouse, in Wickham, in pretty much any career offender case you're going to read, if he deems that the defendant is a career offender, then he has to start by calculating the guidelines. He must begin with the sentence and guidelines under Booker. But that doesn't mean that when he considers the 3553 factors, explains the final sentence, and renders a final determination, that he has to impose the career offender guideline. Why isn't that exactly what he did? He ended up with a considerably lower sentence. He explained why he was given a lower sentence and what's procedurally unreasonable about that. He did exactly what Gall says. A district court should begin all sentencing proceedings by correctly calculating the applicable guideline range. And isn't that all he's saying at page 30? Because he says that, and then several pages later, he starts explaining. I guess they call it a variance. And then he explains how he's varying. Yes, Your Honor. The language is, I mean, I would have to ignore the law. I can't violate my oath on that. This language strongly suggests in concrete terms that the judge thought that the imposition of the career offender enhancement was mandatory, which is not the law. Well, I thought you just said that it was. I'm sorry. Go ahead. I mean, here's my understanding of your argument. I mean, just tell me if this is what you're arguing. There are multiple steps in the sentencing determination. The first one, the starting point, is the calculation of the guidelines. You're not arguing, right, that he could have disregarded the career offender provision for purposes of that initial calculation. Is that correct? Correct. And what you're saying is that in determining the ultimate sentence, he should have considered moving off this criminal history category, which is a departure, if I understand this correctly, rather than a variance. He felt that he couldn't do that. He felt he could only vary. And so I guess one of them is a vertical axis and one is horizontal. And you wanted him to recognize that he could move off criminal history six, which I guess is a quicker way of reducing his guideline. I mean, am I getting the right step here? Yes, Your Honor. United States v. Bold is the Sixth Circuit case, which talks about the three distinct progressions at sentencing. And in this case, what we see happen is the judge beginning by implying the career offender enhancement rightly. But after that, according to Booker, according to Newhouse, according to Wiggum, and many other cases, the judge can do whatever he wants. Well, go ahead. I was going to ask a question about the language on page 30. It says, I mean you're a career offender because their calculation is correct, but I still can do some. Take into consideration the fact that all three of those crimes were committed in a 13-month or so time frame, and I'm going to do that. Yes, Your Honor. So he says, they calculate it right, but I'm going to do something about your criminal history. And what he does is he decides to fix it his way, which is to do it all by citing a specific thing on the vertical axis. Yes, Your Honor. Yeah, I mean just because he could have said, okay, I'm going to fix it, and then later on fixes it by changing the criminal history instead of the vertical axis, I don't see where that matters. He says, I'm going to fix it. So what do I do with this language that says, I'm going to fix your criminal history? I may fix it a different way, but I'm going to fix it. Yes, Your Honor. And indeed, he refers to his own discretion in doing so. But the district court's downward variance does not imply discretionary career offender. A variance in this case is not mutually exclusive with the application of the career. I don't see what you're doing here, because, okay, he says, I'm going to get to the right sentence, and I'm going to do it on the vertical axis. I know you only did these within a 13-month period, which is the criminal history thing. But I have different ways of doing this. So instead of doing it on the criminal history line, which is horizontal, I'm going to do it on the vertical line. Yes, Your Honor. And it seems to me that if he thought a different sentence was warranted, he could have gone down from 26 to 22 in his mind. Yes, Your Honor. But he didn't think that was right. So I'm not sure that we have a difference that makes any difference. Are you referring to harmless error, Your Honor? Not particularly. I'm just thinking that this judge makes a decision as to where he thinks he should come out, and he does it on the vertical scale. That's what he says he's doing. Yes, Your Honor. But one thing is certain in this case. It's that imposing the career offender enhancement in a mandatory fashion is not the law. The problem we've got is we keep going back and forth between whether he's doing it in a mandatory fashion or not. Because the level 31 is just as much part of the career offender enhancement as the criminal history 6, right? If you're a career offender, to calculate the guidelines correctly, which I think you agree he did, you end up at 31 and 6, right? Yes. Okay. At that point, I guess I'm not even sure I agree with Judge Rustandy that he says I'm going to fix the criminal history category. He says I'm going to fix the sentence. Now, at that point, what do you have in the terms of any law that says the way that he does it is subject to attack? As I understand the law, he could have said, I think I ought to go down about 10 years. He could say what he did here is I'm going to go down five levels. He could have said, if you look at the chart, I'm going to keep the level, but I'm going to take your criminal history all the way down to one or two. Any of those would let him give a 120 or so month sentence, correct? Correct. So your statement that he is treating it as mandatory, doesn't it rest only on the fact that he chose to say I'm going to keep the criminal history at 6 and go down? He clearly didn't treat the career offender as mandatory because he blew off the 31, right? Yes, Your Honor. The problem in this case is that we have a problematically high starting point. Without career offender... But if it's a problematically high starting point, that means the guidelines calculation was done incorrectly. You keep sort of shifting about whether you're attacking the starting point or not. And just now, all of a sudden, it sounded like you were. Why don't you just explain what you meant by that? Yes, Your Honor. So a judge in this case must begin with the career offender calculation. In this case, it's 188 to 235 months since the judge believed that Mr. Jones was a career offender. He ended up varying downward to 120 months because he changed the number of criminal history points that Mr. Jones had in this case. However, from 31... He didn't change the...I thought your whole point was he didn't change the criminal history. No, not the criminal history category, Your Honor. All right. Category 6. You said earlier and you agreed with Judge Boggs that the 31 points was part of the career offender mandate here. I don't see that in Section 4B1.1. That just calls out the offense level, doesn't it, that the defendant would have? Yes, Your Honor. As part of our brief, I'm sorry if I came across that way, what we dispute is the criminal history category 6 as having a problematically high starting point. Right. So the fact that he's moving off the points doesn't mean he's rejecting the mandate of the career offender status, does it? Yes, Your Honor. We believe his language suggests that he was bound to impose career offender, and as a result of criminal history category 6, had to start at 188 months, and then when he varied downward, moved to 120. But the record is the record, and there's ambiguity here with his language, even if reasonable minds would disagree. Isn't it correct that once you determine someone is a career offender, equally mandatory under 4B1.1 is that he goes to level 34 of an offense level. He comes down to 31 because of acceptance of responsibility in the calculation, but the 34 or 31 is equally part of the career offender guidelines. Yes, Your Honor. Which he was willing to blow off. Yes, Your Honor. So what's your answer? I mean, then how do you explain why you think the court continued to regard the career offender designation as constraining its ability to modify the sentence? Because a downward variance in this case, from 31 to 26, is not mutually exclusive with the mandatory position of the career offender. Why is it that he could move off the offense level prescribed in 4B1.1? Why should we conclude that he felt he couldn't move off of criminal history category 6? Your Honor, I see my time has finished. That's okay, go ahead. I'll finish your question. So if I'm understanding your question right, we're in agreement that criminal history category 6 is part of the career offender guidelines, but what you're concerned with is the movement downward from 31 to 26 as an equal part. Both are part. You're saying he felt bound by the career offender designation at the third stage of the sentencing, where he's determining the proper sentence. Yes, Your Honor. Okay, but Judge Boggs points out that the career offender designation mandates not only a criminal history category, but also an offense level. Yes, Your Honor. If the court moves off that offense level, why doesn't that support a conclusion that the court did not feel constrained by this designation in the manner that you're arguing? Yes, because in this case the judge did exercise some discretion that he had under Booker. He felt that he could vary from 31 to 26, but for some reason he felt that he could not vary under criminal history category 6, which is actually the part of this sentence that creates the huge disparity between not being a career offender and being a career offender. We're talking about different kinds of discretion. He felt he had discretion to vary from 31 to 26, but he felt he did not have discretion in refusing to depart from criminal history category 6. Thank you, counsel. You'll have your time for rebuttal. Your Honor, my name is Dan Hurley, and I represent the United States. I think counsel is just wrong about what the district court understood. The court says at several different points I can exercise my discretion, I can go through it individually, I can take into consideration, and the court granted a variance, and the variance that it calibrated by offense level is still a variance. Well, what do you make of this sort of monologue he goes off on about, I can't say you're not a career offender because you are, I mean I would have to ignore the law, I can't violate my oath on that? I mean this is pretty strong language that we don't see frequently in transcripts. It is, Your Honor. What is he talking about? He is responding to the request for a departure under the guidelines. Right. For a departure. Isn't that exactly what Mr. Redeker says he felt he couldn't, the district court apparently felt he couldn't do? No, Your Honor. Apart from a variance. Part of the problem is Mr. Redeker and to some extent the district court are switching from departures to variances, back to departures, back to variances. As I understand it, there's a significant difference, Your Honor, under Booker, Gall, and this court's cases. You take the guidelines manual. You apply everything that is relevant. That leads to a criminal history category and offense level, a corresponding guideline range. That gets plugged in under 3553A to the mix of factors that the court's supposed to consider in determining a sentence sufficient but not greater than necessary. In the district court, Mr. Jones asked for a departure under 4A1.3. The argument was the criminal history category is overstated. The district court specifically addressed that and said, you can't say it's overstated in terms of his likelihood of recidivism because he's back for the same offense. He's engaged in the same conduct, guns and drugs. That, as I read the transcript, the district court specifically considered a departure and rejected a departure. Not because it couldn't, but because it's not warranted on these facts. If the argument is a departure is warranted because category 6 substantially overrepresents the likelihood of recidivism, which is the argument that was made, the district judge said, it doesn't substantially overrepresent in this case because he's back doing the same things. From that point, the district court then moves to the 3553A factors. The language that you were quoting, Judge Kethledge, was relevant to the calculation of the applicable guidelines. He can't say he's not a career offender. Because he is, because he's got the qualifying two, in this case three, predicate convictions. This offense is a qualifying offense. The priors are qualifying predicates. He starts at a 34-6, minus three for acceptance of responsibility. Then the district court says at two different points, I can take into consideration the fact that these were committed within a 13-month period. I can consider your background. Specifically says, I can use my discretion to fashion a sentence that I think compares it with everybody else in this case and your involvement along with your background. That's further down on page 30 of the sentencing hearing transcript. That's exactly what the district court is supposed to do. Get the guidelines right. Consider everything in the guidelines manual. Take that number and then use its discretion. One of the things it has to consider is the applicable guideline range and the background and the seriousness of the offense and the need to avoid unwarranted disparity, etc. That's what this district court judge did. Am I right that in the argument for departure, they argued it both in terms of the category and the level? That is, at page 17, as I read it, Mr. Vargas is saying, there's reasons for you to depart off of level 31. Yes, Your Honor. They cited the Geiger case from the Eighth Circuit. Frankly, I think Geiger is wrong about a departure on offense level based on the criminal history substantially over-representing. But the district court understood it had discretion. They tried both ways on departure. He gave reasons not to depart. They tried both ways on variance, and he gave them some and not others. Is that fair? That's right, Your Honor, although I think the problem is really created because the district court frames its variance in terms of offense levels. I'm not going to say it's wrong, but it muddies the waters because at that point we're leaving the guidelines behind. At least this has come up in a lot of cases. But is there any law, either Supreme Court or in this circuit, that says how a district judge must compute a variance as opposed to saying he can do it in numbers of years, he can do it in offense levels, he can do it in criminal history categories? Not that I'm aware of, Your Honor. I think it's easier for you to review it when the judge does, as you suggested, and says the guidelines tell me it should be in this range based on these other factors. I've considered all the ones under the statute. I'm going to oppose a sentence of 10 years, 20 years, 30 years, et cetera. We wouldn't have these issues if it were framed in a term of years as opposed to going back to the guidelines, and I think that's where the confusion arises. When you talk about variance and departure, what do you mean by that? A departure is a step in calculating what does the guidelines manual, what does that tell us about where the sentence ought to be? And there are approved basis for departure. There are discouraged basis for departure. There are a number of factors. Guidelines approved movement away from the calculated range, is that a departure in your view? Yes, the guidelines say under 4B1.2, I think it's A3, they say you can depart one criminal history category. And so if the district judge had thought that the criminal history substantially overrepresented the likelihood of recidivism, the district judge could have moved one column to the left to criminal history category 5. I'm sorry, when you said he could only depart one? Under the guidelines. Under the guidelines. Is that because that's what the guidelines specifically say? Yes. That you can never move by more than one? That's right. On a departure? Okay. On the overrepresentation. And not just because he actually had 12 points, which would have put him right at the cut. He was close to five anyways. But you say the rule is you can only depart by one, period. Under the guidelines. Okay, got it. To apply that rule, you come up with a recommended sentencing range. So if he had given them the departure under your notion, under your statement of it, he would have been starting at 168 to 210 anyway. I think that's right. It's a 31-5, and if that's 31-5, then yes. I'm looking at the chart, so I actually got that right. This is like an approved departure, and then you have things that are departing for unspecified. For example, the policy departures aren't approved in the guidelines. Those are just departures that are allowed by law. I don't think they're departures, Your Honor. I think they're variances. Oh, you think those are variances? Those are variances. Rogue. Well, they're not rogue. No, Your Honor. They're Booker. Variances are grounded in the 3553A factors. Okay. So the guidelines tell us the sentence ought to be within these parameters generally. Then we look to policy. Then we look to the need to impose just punishment, avoid unwarranted disparity, consider the defendant's history and characteristics, nature and circumstance of the offense, et cetera. That's what Booker allows with much greater latitude. Because the mandatoriness of the guideline range was excised from the statute. That is, before Booker, you would have had to do all of your mechanics using departures. Yes. You do not. That's right. Booker then says you can do departures and then you can do anything you want. Because before Booker, once the court calculated the guideline range, 3553B1 said the sentence had to be within that range. And so if it wasn't going to be within a particular range, that was only because either career offender 4A1.3 says it's overstated or 5K gives you a basis to say under the manual the recommended range is different. Is there something that is a non-guideline sentence that is neither, quote, a departure nor a variance? Somebody says the guidelines just don't cover this situation. I'm going to do something different. That's the essence of a variance, Your Honor. Okay. So everything is either a variance or a departure. There's nothing else. Yes. Yes, but they're really at separate steps of the analysis. Okay. Departures all go to what does the Sentencing Commission tell us in this collected wisdom of the manual? Okay. And then Congress says factor that in and come up with a sentence. And we just use the word variance to describe it as being outside the range that the guidelines manual says should be our starting point. So you would say that if you're not doing this departure that's talked about in the guidelines, then you're doing a variance no matter what? It's a variance. Okay. And that's what this judge says. This judge says, I think it's called a variance. And he varies. He just happens to muddy the waters by calibrating his variance by describing it in terms of offense levels. I think that's what makes it difficult here. But I don't have a case that says you can't do that. I just think it makes life harder for me and for you folks. In fact, there are some circuits and some judges who think that is the way to go, that that's the only way to do it. For example, I know Judge Easterbrook has talked about this. You and I disagree on that. I think that's problematic under Booker because I think then we're inching back towards exactly what the Supreme Court said we can't do, which is establish the common law of sentencing. Your counsel never had a chance to get to this, but the reasonableness thing. He says he's going to give him a sentence that's kind of in line with everybody else. I was looking at the ones that were in the record, and it seemed to me the highest one was 125. But then Watkins got 240? Yes, Your Honor. As a mandatory minimum? Yes. Okay. Anybody else get something higher than 125? Not that I recall, Your Honor. Although I don't think, frankly, I don't think that's a particularly strong basis to measure whether this sentence is reasonable. Your comment, I just wanted to get the lay of the land. Okay. And is 120 the mandatory minimum in this case also or not? I do not think there's a mandatory minimum here, although there is language in the transcript where the parties talk about there being a mandatory minimum. The defense attorney makes a reference to a mandatory minimum. I don't think there's a mandatory minimum. The only reason I ask that is the judge says I'm going to give you the minimum sentence, which is 120 months, although that's the minimum under the range that he's just applied to. That's right. I wasn't quite sure whether there was. He's saying it's the bottom of that range. That range, but you don't think there's a mandatory minimum, even though some people said it was. I do not. Okay. I'm not aware of a mandatory minimum. All right. Thank you. Was there a letter? I'm sorry? Was there a letter, a cooperation letter? No. One thing that makes it hard is we're doing two defendants at once in the transcript. The co-defendant, Brian Brown, did get a substantial assistance departure. Okay. That was his part of it. That's not this guy. Right. That's the third guy. And so the co-defendant at this hearing did get a substantial assistance departure under the guidelines, and then the judge sentenced accordingly. This defendant did not cooperate, did not get a substantial assistance departure, was just given a sentence of 120 months because the judge felt that that best reflected his background, the history, and his role relative to the co-defendants. 4A13B, I just looked it up, says that two things can be overrepresented by the career offender designation. Yes, Your Honor. Right. And one of them is the likelihood of recidivism, which, as you correctly point out, the judge specifically and, I thought, pretty powerfully addressed. But the other was the seriousness of his criminal history. They never advanced that as a basis for either departure or, frankly, or a variant. Okay. So in the pre-sentencing memorandum, they don't argue that particular ground? To the extent I understood their arguments, they never asked for a departure or a variance on the ground that the seriousness of the prior offenses was substantially overrepresented. And they can't, I mean, 4A1.3 applies to all defendants. And so there are some defendants who have what we would agree are relatively minor offenses. I mean, you get three points for a sentence of more than a year. And that's true whether it's murder or it's fraud or it's a minor offense and you just happen to get a sentence of 13 months. And so 4A1.3 says the court can take into account the fact that this is not murder. These were the bare minimum, but they still triggered the points because of the length of the sentence imposed. Okay.  They didn't make that argument in the district? They didn't make that argument and I don't think they can make that argument because the Career Offender Guideline identifies specific categories of offenses that Congress has said are sufficiently serious. Remember, the Career Offender Guideline is not a creation out of the blue by the Sentencing Commission. Congress at 28 U.S.C. 994H as part of the Censoring Form Act instructed the commission to create a guideline identifying specific categories of defendants saying if they commit these types of priors and they do it again, we want their sentence at or near the statutory maximum. That's 30 years. This defendant's sentence is nowhere near that, which is also why I think that there's no tenable argument that the sentence is substantively unreasonable. I see my time is up. Unless the panel has any further questions, I'm ready to rest. Thank you, counsel. We have three minutes for rebuttal, Mr. Redeker. Thank you. My opposing counsel used a number of words to describe the sentencing, including muddy waters, confusion, and difficult. The ambiguity in this record exists. Whether or not the panel actually sees this as a concrete violation of the law in terms of imposing the career offender enhancement, there is a serious ambiguity in this sentencing. I think he referred to the ambiguity as in the way in which the judge lowered the sentence. Do you have a view of the law as to whether the view I expressed was he can do it three ways. He can change the level, he can change the history, or he can just say I'm going to go down to a number that I think right. Do you have a different view of the law or do you have a view as to how he should have done it? What we have to go on in this case, Your Honor, is the record. Well, I ask you about the state of the law. That is, did he commit some kind of error by choosing to couch his variance the way he did? That is, I think you agree with me that to the numbers he could have said I'm going to keep the 31 and make you a level one and still give you 120 months. Yes, Your Honor. Yes, Your Honor. We're in agreement about... But I'm asking about the state of the law. What did he do wrong in choosing to couch his variance the way he did? Perhaps you could rephrase. I'm a little bit... All right. He said your guideline range is here. I'm going to give you 120 months. Yes, Your Honor. The reason I'm going to give you 120 months is I'm going to say I'm going down to level 26. I'm going to give you the bottom of that sentence. Yes, Your Honor. As a legal matter, is there something wrong with that way of couching it as opposed to the other ways I've indicated you could have couched it? No, Your Honor. Other than the case we already cited, which was United States v. Bold, which talks about progressions at sentencing and the mandatory imposition of criminal history category six with the career offender enhancement, I think we are in agreement on that. Let me ask you a question that arises from Mr. Hurley's argument, which is, as I understand Mr. Hurley's argument, you're here saying that the court felt it couldn't depart, which means the court felt that it couldn't make some move that the guidelines themselves would sanction here, namely a departure under 4A13. Is that right? Yes. Okay, and so that section would allow a one, I guess you call it level move in the criminal history category. Yes. There are two grounds in this guideline on which a district judge can do that. One is the criminal history category substantially over-represents the likelihood the defendant will recidivate, and number two, it over-represents the seriousness of his criminal history. Yes, Your Honor. He says that in the district court, your client is only arguing the recidivate part of that. Is that correct as a factual matter? Yes, Your Honor. This wasn't something that we raised on brief because we had two separate challenges. One of them was substantively unreasonable, and we focused a lot today on the actual ambiguities of the language it's sentencing and the imposition of the career offender, but that is what the— Well, if it is, if that's the sole basis on which departure was sought in the district court, why isn't Mr. Hurley correct that the district court very squarely answered that when the lawyer sort of perhaps stumbled into this ambush when he said, you know, and it shows it over-represents his likelihood to recidivate, and the judge says, are you kidding me? I mean, he recidivated. That's why we're here on the exact same thing. Isn't that a specific answer to the exact argument that you're arguing the court felt it couldn't consider? Yes, Your Honor. On some level, that is certainly a challenge to the substantive unreasonableness of this case, and we've briefed these issues. I'm talking about your procedural argument that the court felt it could not consider this departure because its hands were tied about career offender. But the court said, no, the reason you're saying he's not a career offender, no, he is, and now I have to honor that. Isn't that a fair reading of the transcript? No, Your Honor. We don't believe so because in this case the judge could have done any number of things. As you mentioned, he could have moved down to criminal history category five, and his language that he would have to ignore the law or violate his oath is not even close to the discretion that he had in this case. For the foregoing reasons, Mr. Jones deserves a remand for resentencing. Thank you very much. Thank you, counsel. We appreciate your taking this case under Mr. Torres as a service for our system of justice. A case will be submitted.